UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KEVIN DAMION CRICHLOW,

                    Plaintiff,

          v.                                    **DECISION AND ORDER**

BRIAN FISCHER et al.,                           6:15-CV-06252 EAW

                    Defendants.

## INTRODUCTION

Plaintiff Kevin Damion Crichlow ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 in the Southern District of New York on October 16, 2012. (Dkt. 2). Plaintiff filed an amended complaint seeking relief against 136 Defendants on June 17, 2013. (Dkt. 12). The action was transferred to this Court on April 28, 2015. (Dkt. 168). The action was then severed by this Court on February 10, 2017. (Dkt. 223). Following severance, 35 Defendants (together "Defendants") remain. (*See id.* at 5-6).

Presently before the Court are: Defendants' motion for summary judgment (Dkt. 177); Plaintiff's motion for discovery (Dkt. 182); Plaintiff's motion to appoint counsel (Dkt. 182); Plaintiff's motion for a stay (Dkt. 182); Plaintiff's motion for a medical exam (Dkt. 187); Plaintiff's motion for reconsideration (Dkt. 192); Plaintiff's motion to amend (Dkt. 192); Plaintiff's motion for a hearing (Dkt. 192); Defendants' motion for sanctions (Dkt. 195); and Plaintiff's motion for sanctions (Dkt. 198).

For the reasons stated below, Defendants' motion for summary judgment is granted in part and denied in part; Plaintiff's motion for discovery is denied without prejudice; Plaintiff's motion to appoint counsel is denied without prejudice; Plaintiff's motion for a stay is denied without prejudice; Plaintiff's motion for a medical exam is denied; Plaintiff's motion for reconsideration is denied; Plaintiff's motion to amend is denied as moot; Plaintiff's motion for a hearing is denied; Defendants' motion for sanctions is denied without prejudice; and Plaintiff's motion for sanctions is denied.

## I.    Plaintiff's Allegations

Plaintiff's amended complaint spans 142 pages.   (*See* Dkt. 12).   Following severance of the action into three separate parts, this Court retained Plaintiff's claims in which he asserts violations of his constitutional rights by Defendants relating to Plaintiff's incarceration at the Wende Correctional Facility ("Wende") and treatment at Wyoming Community Hospital.  (*See* Dkt. 223).

Plaintiff alleges actions occurring at Wende beginning on or about September 27, 2008—the date Plaintiff was transferred to Wende—through his transfer to Eastern Correctional Facility on November 16, 2010.  (*See* Dkt. 12 at 14-36; Dkt. 12-1 at 1-12).

Plaintiff alleges inadequate or nonexistent medical care throughout his incarceration at Wende, in violation of the Eighth Amendment.  Plaintiff argues that he was not provided mental health treatment as required (Dkt. 12 at 19), and that he was "unreasonably exposed to infectious disease" (*id.* at 25, 36; Dkt. 188 at 35-36, 38-39). Plaintiff alleges deficient dental care from "2008 into 2013 at 3 [New York Department of Corrections and Community Supervision] prisons." (Dkt. 12 at 36).   He contends he

was not provided care for "alot of pain hip, jaw, hand, tooth's also need replacement of four's lost teeths & restoration of function and 'oral surgery & periodontics.'" (*Id.* at 31; *see, e.g.*, Dkt. 12-1 at 1). Plaintiff further alleges that he was denied dental care at Wende on June 30, 2008, to fix a "broken jaw." (Dkt. 12 at 36).   As to his medical care, Plaintiff states that Defendant George Boucher, M.D., was grossly negligent in misdiagnosing an injury to Plaintiff's hand, which led to Plaintiff's receiving the "wrong surgery" on January 13, 2010.  (Dkt. 12-1 at 2).  Plaintiff complains that he was denied treatment for "injuries hip, back, shoulder, head" for "about 68 months."   (*Id.* at 3). Plaintiff also asserts that he was subjected to a risk of disease due to asbestos in Wende. (Dkt. 12 at 21-24, 31; Dkt. 188 at 35).

Plaintiff also charges he was deprived of adequate nutrition and hygiene while incarcerated at Wende.  Plaintiff claims that from April to September 2009, Defendants C.O. Bartels and C.O. Kevin Barlow "routinely deprived [Plaintiff] . . . meaningful opportunitie's for yard, food, shower, exercise, adequately nutrition." (Dkt. 12 at 25). He makes similar claims against Defendants C.O. Richard Brooks ("Brooks") (*id.* at 32), and C.O. Alicia Humig ("Humig") (*id.* at 26).  Plaintiff complains that he was "taken off" of a mandatory religious diet for months because he was not allowed to go to the mess hall.  (*Id.* at 32).  Plaintiff also alleges that because he is H.I.V. positive, a nutritious diet is critical to his health, and he was deprived of such a diet.  (Dkt. 12-1 at 1, 3).  Plaintiff asserts that on November 11, 2009, Humig and Defendant Sergeant Paul Olszewski ("Olszewski") refused to let him out of his cell, and placed him in keeplock for about six

weeks. (Dkt. 12 at 32). Plaintiff further alleges that he was refused basic laundry services from 2008 through November 1, 2009. (*Id.* at 27).

Plaintiff complains that Defendant T.M.C. Christopher Zaluski ("Zaluski") and others failed to provide reasonable accommodations for Plaintiff's hearing disability. (Dkt. 12 at 14-16; Dkt. 12-1 at 1). Plaintiff alleges that he was in New York Department of Corrections and Community Supervision ("DOCCS") custody for six months before receiving hearing aids. (Dkt. 12 at 30; Dkt. 12-1 at 1). He also claims that he was denied equal access to opportunities and recreation in Wende because of his hearing disability, and that the failure to accommodate his hearing disability was retaliation for his standing up for himself and other disabled inmates. (Dkt. 12 at 33-35; Dkt. 12-1 at 11-12).

Plaintiff claims he was harassed and verbally abused while at Wende. He alleges numerous instances of sexual harassment by Defendant C.O. Attea, and states that he reported such harassment to others, including the superintendent of Wende. (*Id.* at 17-18, 19, 31). Plaintiff claims that on June 18, 2010, Brooks verbally abused and threatened Plaintiff. (Dkt. 12-1 at 8-9). Plaintiff asserts C.O. Corey Petties verbally abused and threatened Plaintiff on July 12, 2010. (*Id.* at 9-10). Plaintiff alleges that DOCCS has a "common practice to encourage and further its employee's, and officers discrimination and harassment and assault and [deprivation] of proper nutrition." (Dkt. 12 at 20).

Plaintiff also raises Fourteenth Amendment due process claims. Plaintiff complains of unspecified disciplinary proceedings that led a total of 180 days of disciplinary confinement between 2008 and 2010. (*Id.* at 29). Plaintiff claims his due process rights were violated because of the handling of "over 150" grievances filed

- 4 -

through November 16, 2010, by Defendants Director Karen Bellamy ("Bellamy") and Sergeant William Scott ("Scott"). (*Id.* at 27-30). Plaintiff asserts that he was retaliated against for filing grievances and that no investigations were conducted into his claims. (*Id.* at 28). Plaintiff states that he filed over 300 grievances. (Dkt. 209-3 at 8; *see, e.g.*, Dkt. 211 at 1).

He also alleges that on July 4, 2010, C.O. Hojsan destroyed Plaintiff's legal documents in the Wende law library, thereby depriving Plaintiff of an opportunity to be heard by the courts. (Dkt. 12-1 at 10-11). Hojsan also allegedly denied Plaintiff access to the law library. (*Id.* at 11).

Plaintiff complains that a fire broke out in his cell block on April 12, 2010, and that the correctional officers in the area, including Olszewski, failed to respond to calls for help. (*Id.* at 6-7). Plaintiff claims that he was denied "fresh-air" and was thereafter denied medical care. (*Id.* at 7).

Plaintiff further contends that on some unspecified date Zaluski instructed others not to let Plaintiff out of his cell, in retaliation for Plaintiff's filing of grievances against Zaluski. (Dkt. 12 at 30).

Plaintiff complains that Defendant Brian Fischer ("Fischer")—the commissioner of DOCCS during Plaintiff's incarceration at Wende—knew of constitutional violations against Plaintiff and failed to take action. (Dkt. 12-1 at 4-5). Plaintiff states that he personally sent "several letters" detailing inadequate health care and assault. (*Id.* at 4). Plaintiff also contends that Defendants "disregarded conditions posing an excessive risk to [his] health and safety. . . ," and that prison staff was inadequately trained. (*Id.*).

## II.   **Defendants' Motion for Summary Judgment**

### A.   **Standard of Review**

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).   The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred.  *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 206 (2d Cir. 2003).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.*, 475 U.S. at 586-87).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).  But, summary judgment is generally

not appropriate until after some discovery has occurred. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that summary judgment is appropriate on the proper showing "after adequate time for discovery"); *see, e.g.*, *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (emphasis original) (internal quotation marks and citations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom*, 201 F.3d at 97; *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." (citing *Celotex*, 477 U.S. at 326)).

B.   **Statute of Limitations**

Defendants argue that some of Plaintiff's claims are time-barred by the statute of limitations. (Dkt. 177-5 at 3). "In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions. . . .'" *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). A § 1983 action filed in New York is subject to a three-year statute of limitations. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff filed this action October 16, 2012. (Dkt. 1). Therefore, any claim arising before October 16, 2009, is barred by the statute of limitations. Plaintiff points to

the "continuing violation doctrine" to save his otherwise time-barred claims. (Dkt. 209-3

at 21-22).

> [The continuing violation doctrine] applies to claims composed of a series of separate acts that collectively constitute one unlawful practice. The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim. A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.

*Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). Although the continuing violation

doctrine generally applies to claims "composed of a series of separate acts that

collectively constitute one unlawful practice," *id.* at 220, a plaintiff "must allege both the

existence of an ongoing policy of discrimination and some non-time-barred acts taken in

furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir.

2013) (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999)); *see, e.g.*, *Shomo

v. City of N.Y.*, 579 F.3d 176, 182 (2d Cir. 2009).

Here, Plaintiff alleges four patterns of conduct which occurred both before and

after October 16, 2009: (1) denial of adequate medical and dental treatment; (2) denial of

adequate nutrition and hygiene; (3) discrimination and failure to accommodate based on

Plaintiff's disability; and (4) denial of due process rights.

The continuing violation doctrine applies to Eighth Amendment claims for

deliberate indifference to medical needs. *See Shomo*, 579 F.3d at 182 ("[T]he continuing

violation doctrine can apply when a prisoner challenges a series of acts that together

comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). Plaintiff raises a number claims that he was denied adequate medical and dental treatment, which, taken together, could comprise an Eighth Amendment claim for deliberate indifference to serious medical needs.   Plaintiff also complains of ongoing deprivations of adequate food and access to showers and laundry.   Prison officials' Eighth Amendment obligations require that they "ensure that inmates receive adequate food, shelter, and medical care. . . ." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

Defendants argue that Plaintiff failed to allege the existence of a policy of deliberate indifference. (Dkt. 196-2 at 10). The Court disagrees. Plaintiff's amended complaint includes allegations that senior prison officials, including Fischer, knew of ongoing violations related to Plaintiff's inadequate heath care but failed to take action. Plaintiff claims he sent letters to Fischer to point out the inadequacies of his health care at Wende.  Plaintiff also attaches a reply letter from Bellamy in which Bellamy states that she is responding to Plaintiff's letters on behalf of "governor Cuomo and Commissioner Fischer." (Dkt. 209-4 at 2).  Plaintiff also asserts that the practices complained of "are widespread, longstanding, and deeply embedded in the culture of all [DOCCS] agenc[ies], constitut[ing] unwritten [DOCCS] policies & customs." (Dkt. 12-1 at 5).

Similarly, the amended complaint can be read as alleging a continuing violation as to Defendants' indifference to Plaintiff's nutrition and hygiene needs.  Plaintiff alleges that he was routinely deprived of meaningful opportunities to shower and exercise, and was not provided adequate nutrition. (Dkt. 12 at 25; *see, e.g.*, *id.* at 26).  Plaintiff states that while he was in keeplock, corrections officers were told not to feed him. (*Id.* at 26).

He also claims that he was only allowed to shower six times in a nine-month period, and that "his clothing and linen's [sic] were never laundered." (*Id.* at 27).

Plaintiff's allegations are sufficient to establish a plausible claim of "an ongoing policy of deliberate indifference and acts taken in accordance with that policy." *See Taylor v. Goord*, Civil Action. No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825661, at *7 (N.D.N.Y. Sept. 2, 2010), *report and recommendation adopted by* No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825656 (N.D.N.Y. Sept. 24, 2010). *Cf. Bussey v. Fischer*, Civil Action No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4862478, at *5 (N.D.N.Y. Aug. 1, 2011) (finding a plaintiff failed to allege an ongoing policy of deliberate indifference sufficient to show a continuing violation where the alleged unwritten policy was inconsistent with written policies and requirements), *report and recommendation adopted by* No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4499324 (N.D.N.Y. Sept. 27, 2011). Thus, particularly at this stage of the proceedings, Plaintiff's pre-October 16, 2009, claims as to inadequate medical and dental treatment, as well as inadequate food and hygiene, survive Defendants' statute of limitations defense.

Similarly, Plaintiff alleges ongoing discrimination because of his hearing disability in violation of the Eighth and Fourteenth Amendments, as well as the "Rehabilitation Act" and the Americans with Disabilities Act.[1] (Dkt. 12-1 at 1). Plaintiff alleges a pattern of discriminatory conduct, arguing that DOCCS and individual Defendants at

---

[1]   Defendants have not made any statute-of-limitations arguments regarding Plaintiff's claims under the Rehabilitation Act or the Americans with Disabilities Act. (*See* Dkt. 177-5 at 3). Thus, the Court only addresses Defendants' statute-of-limitation argument as it relates to Plaintiff's constitutional claims of discrimination under § 1983.

Wende failed to accommodate his hearing disability. The last complained-of act of discrimination at Wende occurred on August 18, 2010, well within the three-year statute of limitations. Plaintiff alleges that prison staff at Wende continuously failed to provide him reasonable accommodations, such as providing working hearing aids. Plaintiff also states that other disabled prisoners were not provided reasonable accommodations. Such *pro se* allegations are sufficient, at this stage, to state the existence of an ongoing policy of disability discrimination against Plaintiff.

Plaintiff also claims due process violations related to the processing of his grievances and disciplinary hearings. In this context, the continuing violation doctrine does not apply to Plaintiff's Fourteenth Amendment due process claims because "[e]ach decision made without due process is a discrete violation, and the statute of limitations begins to run from the date that the plaintiff was denied the full and fair hearing he was entitled to." *Bunting v. Fischer*, 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016) (citing *Gonzalez*, 802 F.3d at 223), *report and recommendation adopted by* 14-CV-578A, 2016 WL 4804099 (W.D.N.Y. Sept. 14, 2016). Thus, all of Plaintiff's claimed due process violations which occurred before October, 16, 2009, are subject to the statute of limitations and must be dismissed.

In sum, at this stage in the proceedings, Plaintiff's claims of deliberate indifference to medical care, inadequate food and hygiene, and the failure to provide reasonable accommodations for his hearing disability all survive Defendants' statute of limitations challenge. Plaintiff's due process claims which are based on the processing of

his grievances and which arose before October 16, 2009, are time barred and must be dismissed.

### C.     Failure to Exhaust Administrative Remedies

Next, Defendants argue that many of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. (Dkt. 177-5 at 4-6). An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a summary judgment motion made in lieu of answer where inmate failed to exhaust administrative remedies). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw*, 686 F. Supp. 2d at 236 (citations omitted). "Exhaustion is mandatory— unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's decision in *Hemphill v. New*

*York*, 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.'" *Dabney v. Pegano*, 604 F. App'x 1, 3 (2d Cir. 2015) (quoting *Hemphill*, 380 F.3d at 686).   However, the third prong of *Hemphill*, relating to "special circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016).   *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).   The inquiry which used to be under the third prong of *Hemphill*, is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

Here, Plaintiff claims he filed over 300 grievances, and seems to suggest that this is sufficient to exhaust his administrative remedies.  (*See* Dkt. 209-3 at 8; *see, e.g.*, Dkt. 211 at 1).  Plaintiff misunderstands the exhaustion requirement.  The filing of a grievance is but the first step in exhausting administrative remedies.   To exhaust DOCCS administrative remedies, a prisoner must appeal to CORC.  Plaintiff's filing of 300 grievances, even if true, is insufficient to exhaust his remedies under § 1997e.

In response to Defendants' assertion that Plaintiff failed to exhaust his administrative remedies for most of his claims, Plaintiff claims that DOCCS lost or destroyed his grievances.  (Dkt. 209-3 at 19 (claiming that DOCCS destroyed meritorious grievances); Dkt. 211 at 1 (same)).  "Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at [Wende] do not create a material issue of

fact in this case." *See Mims v. Yehl*, Nos. 13-CV-6405-FPG, 14-CV-6304-FPG, 14-CV-6305-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014).

However, Defendants' submissions show that Plaintiff has satisfied the exhaustion requirement for some potential claims. Defendants' sworn declaration from Jeffery Hale—the Assistant Director of the DOCCS Inmate Grievance Program—states that Plaintiff exhausted 25 grievances between the beginning of his incarceration in 2008 and the filing of this action in October 2012. (Dkt. 177-3 at 2). Of those 25 exhausted grievances, 23 relate to Plaintiff's incarceration at Wende. (*See id.* at 5-6). Defendants provide only a printout listing the titles and grievance numbers of the 23 exhausted grievances that arose at Wende (*see id.*); they did not submit any paperwork relating to the grievances themselves or the final resolution of any exhausted grievance. (*See* Dkt. 177).

Plaintiff clearly exhausted some potential claims which could be raised in federal court pursuant to § 1997e. However, the Court cannot determine whether the claims Plaintiff raises in this action are those which have been exhausted because neither party submitted sufficient information which would allow the Court to make such a determination. It is possible that none of Plaintiff's exhausted grievances relate to the named Defendants in this action; it is equally possible that all 23 exhausted grievances relate to actions taken by the named Defendants. Since Defendants seek summary judgment on this basis, it is their burden to establish the lack of any issue of material fact on the exhaustion argument. They have failed to meet this burden. Thus, Defendants' motion based upon Plaintiff's alleged failure to exhaust is denied.

D.    **Plaintiff's Due Process Claims**

Regardless of whether grievances were exhausted or whether the claims were timely asserted, Plaintiff's due process claims relating to disciplinary confinement and grievance processing fail as a matter of law and summary judgment is appropriate.

1.    **SHU Confinement**

Plaintiff alleges due process claims related to disciplinary proceedings which led to disciplinary confinement. (Dkt. 12 at 29). "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra*, 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population," in determining whether a liberty interest is implicated. *Vasquez v. Coughlin*, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz*, 380 F.3d at 654-55; *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.'" (quoting *Palmer*, 364 F.3d at 65)).

Here, Defendants argue that none of Plaintiff's disciplinary confinements violated Plaintiff's due process rights.  (Dkt. 177-5 at 6-7).  Defendants submitted Plaintiff's prison disciplinary record.  (*See* Dkt. 177-4).  The records show Plaintiff was subjected to only one non-time-barred SHU confinement at Wende.  (*See id.* at 8).  That SHU confinement was for 30 days.  (*Id.*).  Plaintiff does not argue that the conditions of his confinement were in any way abnormal or atypical.  Because Plaintiff's disciplinary confinement fell within the "short" range and did not involve any abnormalities, it did not implicate any liberty interest sufficient to raise a due process violation.  Plaintiff's due process claims as to disciplinary confinement at Wende fail as a matter of law.

### 2.   Grievance Processing

Plaintiff also raises due process complaints about the handling of his grievances. (*See* Dkt. 12 at 27-30; Dkt. 209-2 at 21).  It is well-established that inmates do not have a

protected liberty interest in the processing of their prison grievances. *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). "[Although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord*, No. 00 CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (internal citations omitted).

Plaintiff has no liberty interest in the prison grievance program. Even if Defendants violated their own procedures in processing Plaintiff's grievances, Plaintiff cannot find relief under § 1983. A prisoner may raise due process claims related to disciplinary hearings. *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015); *Richard v. Fischer*, 38 F. Supp. 3d 340, 358-59 (W.D.N.Y. 2014). However, Plaintiff's allegations here relate only to allegedly faulty grievance processing; Plaintiff makes no allegations of due process violations related to disciplinary hearings. Therefore, these claims fail as a matter of law.

Plaintiff's only claim against Defendants Bellamy and Scott are the due process claims related to the grievance process. Because Plaintiff's claims fail, Defendants Bellamy and Scott must be dismissed from the action.

## E.     Retaliation

Finally, Plaintiff alleges that he was retaliated against because he filed grievances. (Dkt. 12 at 28).

> A prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances. Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. In fact, our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim. Accordingly, a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.

*Richard v. Fischer*, 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, Plaintiff asserts that because of his filing of numerous grievances, unspecified Defendants retaliated by filing false misbehavior reports. (*See* Dkt. 12 at 28). Defendants have not raised any argument related to Plaintiff's retaliation claim. (*See* Dkt. 177-5). Therefore, the Court will not dismiss the retaliation claim.

**F.   Summary**

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's alleged due process claims, but is denied as to Plaintiff's Eighth Amendment claims related to the alleged denial of adequate medical treatment and adequate food and nutrition, and it is also denied with respect to Plaintiff's claims alleging retaliation and the failure to provide reasonable accommodations for Plaintiff's disability.

**III.   Plaintiff's Motion for Discovery**

Plaintiff moves this Court to open discovery. (Dkt. 182). Plaintiff states that he is "asking for interrogatory answers and other evidence [to] show that the material facts are

in dispute." (*Id.* at 2).  Plaintiff also states that discovery will allow him to show that he filed "over 300 grievances." (*Id.*).

The Court construes Plaintiff's motion as one under Fed. R. Civ. P. 56(d).  In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

> A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient."

*Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).

Here, Plaintiff has not submitted any sworn affidavit or declaration requesting particular information, nor has he described how the material requested is germane to his defense related to the due process claims (the only claims on which the Court has granted summary judgment).  As discussed above, the due process claims are barred as a matter of law, and Plaintiff has not made a showing that discovery would alter that conclusion.  Therefore, the motion for discovery is denied without prejudice to Plaintiff seeking discovery with respect to the claims that remain.

## IV.   Plaintiff's Motion to Appoint Counsel

As part of Plaintiff's motion for discovery, he also moves this Court to appoint counsel "to assist [Plaintiff] in preparing his case. . . ." (Dkt. 182 at 5).  Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *see, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).  The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).  Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986))).  Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

Plaintiff was in prison when he filed the complaint, and remains in custody. (*See* Dkt. 1; Dkt. 4).  Plaintiff has already been granted *in forma pauperis* status in this case. (Dkt. 5).  In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 4 at 1-2).  A prison official certified that Plaintiff's average account balance for the previous six months was $1.07. (*Id.* at 3).  Plaintiff has conclusively shown that he is indigent, and

has met the threshold test for appointing counsel.

However, the *Cooper* factors all weigh against appointing counsel at this time. Plaintiff's motion papers provide no information suggesting that he attempted to obtain counsel to assist in his case. (*See* Dkt. 182 at 5). As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper*, 877 F.2d at 173. In the absence of an affirmative statement by Plaintiff otherwise, the Court assumes that he has not sought an attorney to represent him. This weighs against the appointment of counsel.

The Court also finds that the Plaintiff has failed to show anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles, including Defendants' defense that Plaintiff failed to exhaust his administrative remedies. This too weighs heavily against the appointment of counsel.

Balancing the factors set forth in *Cooper*, the Court finds that appointing counsel is inappropriate at this time, and Plaintiff's motion is denied without prejudice.

## V.   Plaintiff's Motion for a Stay

Plaintiff moves this Court to stay the action while he undergoes surgery on his wrist, arm, and back. (Dkt. 182 at 6). Plaintiff does not disclose the date of the surgery, or any further information which would allow the Court to evaluate the necessity of such a stay. (*See id.*). Plaintiff has not sufficiently shown a need for a stay in the litigation. Therefore, the motion is denied without prejudice.

## VI.   Plaintiff's Motion for a Medical Exam

Plaintiff asks this Court, pursuant to Fed. R. Civ. P. 35, to order a medical examination so that he can access medical care for currently occurring medical issues. (Dkt. 187).   Rule 35 permits a court to order "a party whose . . . condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.   The court has the same authority to order a party to produce for examination a person who is in its custody. . . ." Fed. R. Civ. P. 35.   "In order to obtain a medical examination under Rule 35, the moving party must establish 'good cause. . . .'" *Kelly v. Times/review Newspapers Corp.*, CV 14-2995 (JMA) (SIL), 2016 WL 2901744, at *1 (E.D.N.Y. May 18, 2016).   "'Rule 35 does not, however, authorize a party to file a motion for his own physical examination.'   Neither may a plaintiff invoke Rule 35 in order to receive medical care."   *Rodriguez v. Conway*, No. 10-CV-6243L, 2011 WL 4829725, at *3 (W.D.N.Y. Sept. 6, 2011) (citations omitted), *affirmed in relevant part by* No. 10-CV-6243L, 2011 WL 4829869 (W.D.N.Y. Oct. 12, 2011).

Here, Plaintiff's current medical condition is not "in controversy."   Plaintiff has already submitted records regarding his medical and dental maladies for the time period at issue in this action.   (*See* Dkt. 209-5 at 1-27).   Defendants have in no way challenged the substance of Plaintiff's claimed medical needs during his incarceration at Wende from 2008 to 2010.   Further, Plaintiff cannot use Rule 35 to receive medical care. Therefore, Plaintiff's motion is denied.

## VII.   Plaintiff's Motion for Reconsideration

Plaintiff titles his motion at Dkt. 192 as a "motion for reconsideration," however, he does not point to any order or decision of the Court for which he seeks reconsideration.   Although the Court has the inherent power to reconsider and modify interlocutory orders prior to the entry of judgment, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Williams v. Cty. of Nassau*, 779 F. Supp. 2d 276, 280 & n.2 (E.D.N.Y. 2011) ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd*, 581 F. App'x 56 (2d Cir. 2014), Plaintiff has not provided sufficient information to allow the Court to decide his motion.   Therefore, Plaintiff's motion is denied.

## VIII.   Plaintiff's Motion to Amend

Plaintiff also filed a motion which, in essence, asks the Court to allow Plaintiff to amend his response to Defendants' motion for summary judgment.   (Dkt. 192).   The Court granted such relief already (Dkt. 208), and Plaintiff already filed amended response papers (Dkt. 209; Dkt. 211).   Therefore, Plaintiff's motion is denied as moot because he has already received the requested relief.

## IX.   Plaintiff's Motion for a Hearing

Plaintiff further asks the Court to hold a hearing "to cover several issue[s] that Plaintiff [does not] fully[] understand." (Dkt. 192 at 3).   Plaintiff also seeks scheduling

conferences or orders pursuant to Fed. R. Civ. P. 16(b) and 26(f).  The Court finds that neither a hearing nor a scheduling order is necessary at this time.  If Plaintiff has legal questions, he may retain an attorney or do further legal research to answer those questions.  It is not the Court's role to answer such questions.  Thus, Plaintiff's motion is denied.  Once an answer is filed, the case will proceed to discovery.

## X.    **Defendant's Motion for Sanctions**

Defendants move this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11.  (Dkt. 195).  Defendants argue that, as part of his response to the motion for summary judgment, Plaintiff filed a grievance exhausted by another inmate, claiming the grievance as one Plaintiff had himself exhausted.  (Dkt. 195-2 at 1-2 (citing Dkt. 188-8 at 2)).  Plaintiff allegedly did so in an attempt to show that the Jeffery Hale declaration was knowingly false and that Defendants had destroyed Plaintiff's grievances.  (*Id.* (citing Dkt. 188 at 12)).

A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support.  Fed. R. Civ. P. 11(b)(3).  Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  "Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous."  *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citation omitted).  "Further, even when a district court finds a violation of Rule 11, 'the

decision whether to impose a sanction is committed to the district court's discretion.'" *Id.* (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)).

Defendants argue that "the only appropriate sanction in this matter is dismissal." (Dkt. 195-2 at 3). The Court disagrees. The grievance at issue relates to a complaint which arose during 2012 and 2013. (Dkt. 188-8 at 2). Even if Plaintiff was the grievant, the grievance itself would be irrelevant to this Court's inquiry into Plaintiff's incarceration conditions from 2008 until 2010. Indeed, the grievance at issue was not taken into account during the Court's review of the motion for summary judgment because it is irrelevant to the time frame at issue. Further, although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal, *see Ceglia v. Zuckerberg*, No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), *report and recommendation adopted by* 2014 WL 1224574 (W.D.N.Y. 2014), *aff'd*, 600 F. App'x 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. However, **Plaintiff is hereby warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions**.

Defendants' motion is denied without prejudice.

## XI.   Plaintiff's Motion for Sanctions

Finally, Plaintiff asks this Court to impose sanctions on Defendants for making materially misleading and false statements to the Court in its response in opposition (Dkt. 174) to Plaintiff's letter motion (Dkt. 172). (Dkt. 198). The Court denied Plaintiff's motion as unrelated to the claims at issue in this action. (Dkt. 176).

Read generously, Plaintiff argues that Defendants' counsel failed to acknowledge in his response that one of the individuals named in the letter motion was also a named Defendant in this action.  (*See* Dkt. 198 at 1-2).  Such a misstatement is immaterial and does not warrant sanctions.  As Plaintiff failed to assert any material violation of Rule 11, sanctions are inappropriate, and Plaintiff's motion is denied.

## CONCLUSION

For the foregoing reasons, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment (Dkt. 177);

INSTRUCTS the Clerk of Court to terminate Defendants Bellamy and Scott from this action;

DIRECTS Defendants to answer the complaint within 30 days of the filing of this Decision and Order;

DENIES Plaintiff's motion for discovery (Dkt. 182) without prejudice;

DENIES Plaintiff's motion to appoint counsel (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a stay (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a medical exam (Dkt. 187);

DENIES Plaintiff's motion for reconsideration (Dkt. 192);

DENIES Plaintiff's motion to amend (Dkt. 192) as moot;

DENIES Plaintiff's motion for a hearing (Dkt. 192);

DENIES Defendants' motion for sanctions (Dkt. 195) without prejudice; and

DENIES Plaintiff's motion for sanctions (Dkt. 198).

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 7, 2017
       Rochester, New York